# Exhibit A



## Why Choose Chartis for your Executive Liability Coverage needs?

### UNDERWRITING EXPERTISE & MARKET DEDICATION

- Named the #1 provider of Directors & Officers insurance and Employment Practices Liability insurance [1]

- More than four decades of experience and commitment to the market, offering stable, high-limit capacity with a diverse appetite for risk

- Broad and innovative product offering, including unrivaled international capabilities via our Passport platform

- Ongoing pursuit of outstanding client service through continuous dialogue and client feedback response

- Over 350 dedicated underwriting professionals with an average of 10 years of industry experience

- A dedicated legal staff skilled in developing manuscript solutions tailored to client coverage needs

- Regional offices provide local underwriting presence and authority, delivering expertise and solutions across all lines of business

- Specialized underwriting and claims units focused on key segments, including Errors and Omissions, Financial Institutions, Fidelity and Private and Non-Profit

- Large geographic footprint that benefits companies doing business in multiple international jurisdictions

- Nearly 20,000 unique policyholders [2]

### SUPERIOR CLAIMS MANAGEMENT

- We have a claims staff of 300 who manage 30,000 new claims per year, averaging 2,250 new claims per month

- Our claims management team has an average of 15 years of industry experience for management

- Total payments made by Executive Liability on behalf of its insureds in 2009 totaled more than $1.9 billion

- Resolved claims exceeding $9 million in value have increased over 850 percent since 1996 [3]

- The top 25 claims paid by Executive Liability in 2009 totaled over $300 million

### CHARTIS FINANCIAL SNAP-SHOT

- Chartis U.S. Policyholder Surplus is $28 billion[4] (increased 58% from 12/31/05 to 12/31/09)

- In 2009, Chartis companies wrote in excess of $40 billion gross written premiums worldwide

- Chartis has ample resources to pay policyholder claims, paying $71 million in claims worldwide every business day in 2009

- Objective sources confirm our company's strong financial standing.  From rating agencies to broker assessments, metrics in the insurance industry indicate that Chartis remains one of the most financially secure insurance organizations

- Our financial strength combined with our experience, global reach and broad range of product and service offerings, solve the insurance needs of 40 million clients worldwide

### STAYING POWER

Our consistent market leadership and commitment has lasted for more than four decades, while other carriers shift their focus and support from year-to-year. Our global underwriting capacity, philosophy and expertise-coupled with our local presence-enables Executive Liability to assess the most complex risks and respond rapidly when unforeseen events occur.

1 The Risk and Insurance Management Society 2009 Benchmark Survey http://www.rims.org/resources/BenchmarkSurvey/Pages/default.aspx.
2 Does not include Programs or Small Business accounts.
3 NERA Economic Consulting.
4 Year ended December 31, 2009.

## INNOVATIVE SOLUTIONS

### Management Liability

**Executive Edge**[SM]: Primary public company D&O coverage with market leading features, including advancement of covered loss for directors and officers when the company fails or refuses to indemnify for any reason, worldwide investigation and inquiry coverage and a simplified "entity vs. insured" exclusion in place of the "insured vs. insured" exclusion.

**Executive Shield:** Follow form excess Side-A Directors & Officers Liability Insurance with Difference In Conditions coverage that is distinct from other Side-A DIC policies. The policy provides individual directors and officers with the coverage they need to protect themselves and their assets when facing a claim.

**PrivateEdge Plus:** A flexible modular package that offers market-leading management and professional liability coverage for private companies of any size. Choose one or combine multiple coverage options to customize a comprehensive program that meets specific business needs.

**Not-for-Profit-Risk-Protector**[®]: A flexible modular package policy designed to help non-profit organization clients manage their management liability and other liability risks. Choose one or combine multiple coverage options to customize a comprehensive program that meets specific business needs. The policy is available to all non-profit organizations regardless of revenue, asset size or employee count.

**Public Entity Plan and Trustee Protector:** A policy that protects individuals who manage governmental entity employee benefit plans from fiduciary liability exposures.

**Financial Institutions Risk Protector**[®]: A modular package of management and professional liability coverages for private and public financial institutions. Coverages can be bundled into one policy to provide flexible protection tailored for a financial institution's full spectrum of management and professional liability risks.

**Excess Edge**[SM]: Follow form excess management and professional liability coverage that reduces the administrative burden facing brokers and their clients when placing excess insurance for directors and officers liability, employment practices liability, fiduciary liability, errors and omissions liability, and other executive liability exposures.

### Professional Liability

**Specialty Risk Protector**[®]: A modular package of professional liability and data network security coverages for all types of businesses. Businesses can bundle multiple lines of coverage into one policy.

**Corporate Counsel Premier**[®]: Provides general counsel and other in-house attorneys employed by public and private companies with coverage for claims alleging professional malpractice.

**Lawyers Professional Liability Program:** This admitted program provides broad coverage for attorneys and includes crisis management coverage to help mitigate damage to a law firm's reputation.

**Personal Identity Coverage:** Enables organizations to extend expert assistance and financial relief to employees, customers or members who are victims of identity theft. This innovative program combines extensive recovery support as well as reimbursement of costs related to a theft incident.

### Value Added Services

**Passport:** State-of-the-market approach for multinationals to secure locally-admitted insurance that is in sync with local requirements and customs, and written in local language worldwide.

**EPL Pak**[®] **Premier:** The Employment Practices Liability Loss Prevention Pack offered through Jackson Lewis, LLP, helps insureds proactively mitigate employment practices exposures. The program includes both training programs that help instill proper employment practices within an organization and resources to keep employers informed of changing statutes, regulations and court decisions shaping the employment landscape.

**CrisisFund**[®]: Built-in crisis management enhancement provides policyholders with professional support, including a 24-hour hotline with access to claims specialists, and immediate funds in the event of a serious crisis. Up to $250,000 of additional policy limits available to cover immediate expenses and an additional $50,000 limit to retain the services of a public relations or crisis management firm.

**Fidelity Research and Investigative Settle Clause (FRISC):** A unique provision in Fidelity policies that allows the insured to select an investigative specialist or forensic accountant to determine the facts of the case and quantify the loss. This sets the stage for an efficient, cooperative loss investigation and settlement process that can save the insured time and money. Even if the loss is ultimately determined to not be covered under the policy, the insurer still pays half of the investigation expenses.

**eDiscovery Solutions:** A litigation-management tool devised to create a strategy to handle the collection of electronically stored information throughout litigation.

**Panel Counsel:** Comprised of some of the nation's premier litigators who specialize in defending securities, employment practices, fiduciary liability and technology litigation. Participating law firms have a proven record of achieving litigation success while maximizing litigation efficiency. Consistent superior performance is required to maintain a position on the panel.

For more information about Executive Liability, please contact us at
executiveliability@chartisinsurance.com or visit www.chartisinsurance.com.



Chartis is a world leading property-casualty and general insurance organization serving more than 40 million clients in over 160 countries and jurisdictions. With a 90-year history, one of the industry's most extensive ranges of products and services, deep claims expertise and excellent financial strength, Chartis enables its commercial and personal insurance clients alike to manage virtually any risk with confidence.

Chartis is the marketing name for the worldwide property-casualty and general insurance operations of Chartis Inc. For additional information, please visit our website at www.chartisinsurance.com. All products are written by insurance company subsidiaries or affiliates of Chartis Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

## **POLICYHOLDER NOTICE**

Thank you for purchasing insurance from the Chartis companies.  Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation  or by calling 1-800-706-3102.

91222 (12/09)

**Executive Liability**
175 Water Street
New York, NY 10038
www.chartisinsurance.com



eDiscovery Solutions

Dear Insured:

Congratulations on purchasing your Executive Edge$^{SM}$ policy from a member company of Chartis Inc. (Chartis), one of the premier writers of management liability insurance. Your policy offers many outstanding features, and as a Chartis Insured you have the confidence of knowing that your claims will be handled by highly experienced claims professionals. In addition, our panel counsel is comprised of leading law firms throughout the country.

The purpose of this letter is to introduce you to eDiscovery Solutions, a value-added program providing e-discovery advantages to Executive Edge policyholders. The risks associated with not being prepared to handle requests to produce electronically stored information (ESI) are significant as companies are held accountable for missteps made along the way and the potential costs of e-discovery are exorbitant. eDiscovery Solutions provides Executive Edge policyholders with the advantage of assisting in the creation of an e-discovery plan before litigation commences and the development of a cost-effective strategy to address e-discovery when a claim does arise. As an Executive Edge policyholder, you have access to the following suite of optional eDiscovery Solutions benefits to minimize the risks and expense of e-discovery:

- Help in creating an effective e-discovery strategy before a claim arises.
  - 2.5 hour "boot camp" by Encore Discovery Solutions (an independent third party provider of e-discovery services) addressing the major components of e-discovery plus an additional 10 hours of expert e-discovery consultation with Encore to assess e-discovery readiness at no cost to insureds that remain on risk. These services are available at no cost to policyholders and favorable rates are available to those policyholders who wish to purchase additional services.

- Guidance and management through the process of responding to ESI requests.
  - Pre-approved independent experts assist in responding to requests to produce ESI through development of a cost-effective strategy.
  - Pre-approved independent consultants oversee the e-discovery process including assessment of information systems capabilities, locating and preserving relevant electronic data stores, vendor selection, defining scope of work and establishing metrics to evaluate and monitor efficient execution.
  - First $25,000 of consultants' fees covered with no retention and policyholders may choose to continue to benefit from the consultant's services at pre-negotiated favorable rates.

To take advantage of the services offered through eDiscovery Solutions, email ediscoverysolutions@chartisinsurance.com or contact your insurance broker or Chartis underwriter.



**National Union Fire Insurance Company of Pittsburgh, Pa.**®
*A capital stock company*
(the "**Insurer**")

**POLICY NUMBER:** *01-424-44-41*                    **REPLACEMENT OF POLICY NUMBER:** *N/A*

# Executive Edge®

**Broad Form Management Liability Insurance Policy**

---

NOTICES: This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Inquiries** that an **Insured Person** first received, and (iii) **Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period**. Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the Notice and Reporting clause for details). Covered **Defense Costs**, **Pre-Claim Inquiry Costs** and **Derivative Investigation Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the retention amount. The **Insurer** does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

---

## DECLARATIONS

1.   **NAMED ENTITY**:        *CERADYNE, INC.*

     **Named Entity Address**:   *17466 DAIMLER ST*
                              *IRVINE, CA 92614-5514*

     **State of Formation**:     *Delaware*

2.   **POLICY PERIOD**:     From: *November 29, 2012*          To: *November 29, 2018*
     The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**.

3.   **PREMIUM**:                                                        *$272,690*

4.   **LIMIT OF LIABILITY**:                                             *$5,000,000*

5.   **RETENTION**: Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Crisis Loss** or
                                   (iii)   **Derivative Investigation Costs**.

     (a) **Securities Retention**:                                       *$500,000*

     (b) **Employment Practices Retention**:                             *$250,000*

     (c) All other **Loss** to which a Retention applies :               *$250,000*

     If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

6.   **PASSPORT** :    This policy ☐ serves, or ☒ does not serve, as a master Passport policy.

*1446451*

                   Ⓒ Chartis Inc. All rights reserved.

DECLARATIONS (Continued)



**7.    INSURER**

    (a) **INSURER ADDRESS** :    *175 Water Street*
                             *New York, NY 10038-4969*

    (b) **CLAIMS ADDRESS** :    By E-Mail:  c-claim@chartisinsurance.com
                          By Mail:  *Chartis, Financial Lines Claims*
                                          *P.O. Box 25947*
                                          *Shawnee Mission, KS 66225*

                                  In either case, reference the Policy Number.

**8.    CONTINUITY DATES**

    (a) **Outside Entity Executive** Coverage--The date on which the **Executive** first served
        as an **Outside Entity Executive** of such **Outside Entity.**

    (b) All other coverage:                           *July 24, 2000*

**9.    TRIA PREMIUM, TAXES AND SURCHARGES**

    **(a) TRIA Premium**                              *N/A*

    Coverage for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002 was
    rejected by insured. A copy of the TRIA disclosure sent with the original quote is attached hereto.

---

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

PRESIDENT           AUTHORIZED REPRESENTATIVE           SECRETARY

*WOODRUFF-SAWYER & CO*
*2 PARK PLAZA, SUITE 500*
*IRVINE, CA 92614*

    *1446451*

 Ⓒ Chartis Inc. All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *CERADYNE, INC.*


Policy Number: *01-424-44-41*
Policy Period Effective Date From: *November 29, 2012*   To: *November 29, 2018*



# Executive Edge®

## BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

| | | |
|---|---|---|
| **1. INSURING AGREEMENTS** | | **1** |
| | A.   Insured Person Coverage | 1 |
| | B.   Indemnification Of Insured Person Coverage | 1 |
| | C.   Organization Coverage | 1 |
| | D.   Crisisfund® Coverage | 1 |
| **2. EXTENSIONS** | | **2** |
| | A.   Executive Protection Suite | 2 |
| | B.   First Dollar E-Discovery Consultant Services | 2 |
| | C.   Worldwide & Cross-Border | 2 |
| **3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE** | | **3** |
| | A.   Advancement | 3 |
| | B.   Order of Payments | 3 |
| | C.   Bankruptcy And Insolvency | 3 |
| **4. EXCLUSIONS** | | **4** |
| **5. RETENTION** | | **5** |
| **6. LIMITS OF LIABILITY** | | **6** |
| **7. NOTICE AND REPORTING** | | **6** |
| **8. DISCOVERY** | | **8** |
| **9. DEFENSE AND SETTLEMENT** | | **9** |
| | A.   For Claims And Pre-Claim Inquiries | 9 |
| | B.   Pre-Authorized Securities Defense Attorneys | 10 |
| | C.   Pre-Approved E-Consultant Firms | 10 |
| | D.   Allocation | 10 |
| **10. CHANGES TO INSUREDS** | | **10** |
| | A.   Transactions | 11 |
| | B.   Subsidiary Additions | 11 |
| | C.   Former Subsidiaries | 11 |
| | D.   Scope of Subsidiary Coverage | 11 |
| **11. APPLICATION AND UNDERWRITING** | | **12** |
| | A.   Application And Reliance | 12 |
| | B.   Renewal Application Procedure | 12 |
| | C.   Insured Person Coverage Non-Rescindable | 12 |
| | D.   Severability Of The Application | 12 |
| **12. GENERAL TERMS AND CONDITIONS** | | **13** |
| | A.   Payments And Obligations Of Organizations And Others | 13 |
| | B.   Cancellation | 14 |
| | C.   Notice And Authority | 14 |
| | D.   Currency | 14 |
| | E.   Assignment | 14 |
| | F.   Disputes | 15 |
| | G.   Spousal, Domestic Partner And Legal Representative Extension | 16 |
| | H.   Conformance To Law | 16 |
| | I.   Headings | 16 |
| **13. DEFINITIONS** | | **17** |

© Chartis Inc. All rights reserved.

Executive Edge



In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

## 1. INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to:  (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy. Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

*A. Insured Person Coverage*

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs.**

*B. Indemnification Of Insured Person Coverage*

This policy shall pay the **Loss** of an **Organization** that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person.**

*C. Organization Coverage*

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured.**

*D. Crisisfund® Coverage*

This policy shall pay the **Crisis Loss** of an **Organization**, up to the $100,000 **CrisisFund®**; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

                              © Chartis Inc. All rights reserved.

Executive Edge



## 2. EXTENSIONS

### A. Executive Protection Suite

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

**(1) SOX 304 Costs**;

**(2) Extradition Costs**;

**(3) UK Corporate Manslaughter Act Defense Costs**;

**(4) Personal Reputation Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

**(5) Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

### B. First Dollar E-Discovery Consultant Services

For any **Securities Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services.**

### C. Worldwide & Cross-Border

| | |
|---|---|
| *Worldwide Territory* | The coverage afforded by this policy shall apply anywhere in the world. |
| *Global Liberalization* | For **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction.** This *Global Liberalization Clause* shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect. |
| *Passport Master Policy Program* | If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity.** The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy. |

© Chartis Inc. All rights reserved.

Executive Edge



## 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE

### A. Advancement

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied.  In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any  **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**.  Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the  **Limits of Liability.**

### B. Order Of Payments

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the  **Insurer** shall in all events:

(1)   First, pay all **Loss** covered under Insuring Agreement A.  *Insured Person Coverage*;

(2)   Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3)   Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund® Coverage*.

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an  **Insured Person.**

### C. Bankruptcy And Insolvency

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Organization** and **Insured Person** agree to cooperate in any efforts by the **Insurer** or any **Organization** or **Insured Person** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

© Chartis Inc. All rights reserved.

Executive Edge



## 4. EXCLUSIONS

### A. *Full Severability Of Exclusions For Insured Persons*

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Organization** shall be imputed to such **Organization.**

### B. *Exclusions*

The **Insurer** shall not be liable to make any payment for **Loss**, other than **Crisis Loss**, in connection with any **Claim** made against an **Insured**:

| | | |
|---|---|---|
| (1) | *Conduct* | arising out of, based upon or attributable to any: |

    (a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or

    (b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy;

provided, however:

    (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

    (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

| | | |
|---|---|---|
| (2) | *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; |
| (3) | *Personal Injury* | for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim** or a **Securities Claim**; |
| (4) | *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |

© Chartis Inc. All rights reserved.

Executive Edge



B. *Exclusions* (Continued)

(5) *Entity v. Insured*    that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; or

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization** or **Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization** or **Outside Entity** or any **Executive** of the foregoing;

(6) *ERISA*    for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law; or

(7) *Compensation & Labor Liability*    for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), or any federal, state, local or foreign law, amendment to a law, or any rule or regulation, that imposes or expands responsibilities, obligations or duties relating to compensation, retirement, benefits, deductions, withholdings, breaks or the workplace; provided, however, this exclusion shall not apply to the extent that a **Claim** is for discrimination, sexual or other harassment, wrongful termination or hostile work environment, or for **Retaliation**, or to the extent that a **Claim** is a **Securities Claim**.

## 5. RETENTION

No Retention is applicable to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) **Crisis Loss**.

Except as provided above and in the *First Dollar E-Discovery Consultant Services Extension*, for each **Claim** or **Pre-Claim Inquiry**, the **Insurer** shall only be liable for the amount of covered **Loss** arising from such **Claim** or **Pre-Claim Inquiry** which is in excess of the applicable Retention set forth on the Declarations or in any endorsement to this policy. Amounts within the Retention shall remain uninsured.

A single Retention shall apply to **Loss** arising from all **Related Claims** and all **Related Pre-Claim Inquiries**. In the event a **Claim** or **Pre-Claim Inquiry** triggers more than one Retention, then, as to such **Claim** or **Pre-Claim Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Pre-Claim Inquiry** unless this policy expressly provides otherwise.

     5      © Chartis Inc. All rights reserved.

Executive Edge



## 6. LIMITS OF LIABILITY

The **Limit of Liability** stated in the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** (including **Defense Costs** and **Pre-Claim Inquiry Costs**) under this policy. The **Limit of Liability** and all sublimits of liability are collectively referred to in this policy as the "**Limits of Liability.**"

Each aggregate sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** under this policy that is subject to that aggregate sublimit of liability. Each per **Executive** sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** of each **Executive** under this policy that is subject to that per **Executive** sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the **Limit of Liability.** Each per **Executive** sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

The **Limits of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limits of Liability** for the **Policy Period**. Further, all **Related Claims** and all **Related Pre-Claim Inquiries** that are considered made or received during the **Policy Period** or **Discovery Period** pursuant to subparagraph (b) or (c) of Clause 7. *Notice And Reporting*, shall also be subject to the applicable **Limits of Liability** set forth in this policy.

**Defense Costs** are not payable by the **Insurer** in addition to the **Limits of Liability. Defense Costs** are part of **Loss** and as such are subject to the **Limits of Liability** for **Loss.**

## 7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

(a)  *Reporting a Claim, Pre-Claim Inquiry or Crisis*

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy:

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured** or a **Crisis**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after (i) the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**; or (ii) the **Crisis** commences. In all such events, notification must be provided no later than 60 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

104123 (04/10)                                          6                          © Chartis Inc. All rights reserved.

Executive Edge



(b)  *Relation Back to the First Reported Claim or Pre-Claim Inquiry*

Solely for the purpose of establishing whether any subsequent **Related Claim** was first made or a **Related Pre-Claim Inquiry** was first received during the **Policy Period** or **Discovery Period** (if applicable), if during any such period:

(1) a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; and

(2) a **Pre-Claim Inquiry** was actually first received by an **Insured Person** and reported in accordance with Clause 7(a) above, then:

   (i)  any **Related Pre-Claim Inquiry** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Pre-Claim Inquiry** first received at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**; and

   (ii) any subsequent **Related Claim** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Claim** first made at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person.**

With respect to any subsequent **Related Pre-Claim Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Pre-Claim Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured. Claims** actually first made or deemed first made prior to the inception date of this policy, **Pre-Claim Inquiries** first received or deemed first received by an **Insured Person** prior to the inception date of this policy, and **Claims** or **Pre-Claim Inquiries** arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

(c)  *Relation Back to Reported Circumstances Which May Give Rise to a Claim*

If during the **Policy Period** or **Discovery Period** (if applicable) an **Organization** or an **Insured Person** becomes aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** being made against an **Insured** and provides details as required below, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period** or during the **Discovery Period** (if applicable). Coverage for **Loss** arising from any such subsequent **Claim** shall only apply to **Loss** incurred after that subsequent **Claim** is actually made against an **Insured.** In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential **Claims** described within that agreement.

    © Chartis Inc. All rights reserved.

Executive Edge



## 8. DISCOVERY

*Bilateral Discovery Options*   Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew or replace this policy, the **Insureds** shall have the right to a period of one to six years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during said **Discovery Period** and solely with respect to a **Wrongful Act** that occurs prior to the end of the **Policy Period.**

*Discovery Premium*   The **Additional Premium Amount** for: (a) one year shall be no more than 125% of the **Full Annual Premium**; (b) two to six years shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period.**

*Transaction Option*   In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this *Discovery Clause* shall terminate unless written notice by any **Insured** of election of a **Discovery Period**, together with the additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction.**

© Chartis Inc. All rights reserved.

Executive Edge



## 9.  DEFENSE AND SETTLEMENT

### A. For Claims And Pre-Claim Inquiries

(1) *No Duty to Defend or Investigate*

The **Insureds** shall defend and contest any **Claim** made against them. The **Insurer** does not assume any duty to defend or investigate.

(2) *Advancement*

Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 90 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

(3) *Claims Participation and Cooperation*

The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** or **Pre-Claim Inquiry** that involves, or appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Insured Person** under this policy.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** or **Pre-Claim Inquiry Costs**, without the prior written consent of the **Insurer**.  Such consent shall not be unreasonably withheld.

(4) *Full Settlement Within Retention/ Consent Waived*

If all **Insured** defendants are able to dispose of all **Claims** and/or **Pre-Claim Inquiries** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

(5) *Applicability*

This *Defense and Settlement Clause* is not applicable to **Crisis Loss** or **Personal Reputation Expenses**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

104123 (04/10)                               9                     © Chartis Inc. All rights reserved.

Executive Edge



**B. Pre-Authorized Securities Defense Attorneys**

The list of approved panel counsel law firms (**"Panel Counsel"**) is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "Directors & Officers (Securities Claims)" link. The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**. With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel** may be amended from time to time by the **Insurer**. However, if a firm is removed from the list during the **Policy Period**, the **Insureds** shall be entitled to select such firm to conduct the defense of any **Securities Claim** made against such **Insureds** during the **Policy Period**.

The **Insureds** shall select a **Panel Counsel** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel** which will function as "lead counsel" in conducting the defense of the **Securities Claim**. This *Pre-Authorized Securities Defense Attorneys Clause* does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

**C. Pre-Approved E-Consultant Firms**

The list of pre-approved e-discovery consulting firms (**"E-Consultant Firms"**) is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

**D. Allocation**

An **Organization** is covered, subject to the policy's terms, conditions and limitations, only with respect to: (1) its indemnification of its **Insured Persons** as respects a **Claim** against or **Pre-Claim Inquiry** received by such **Insured Persons**; (2) a **Securities Claim** against such **Organization**; (3) **Crisis Loss**; and (4) **Derivative Investigation Costs**. Accordingly, the **Insurer** has no obligation under this policy for defense or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim**, or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**, such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insured Person** and such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the

© Chartis Inc. All rights reserved.

Executive Edge 

Insurer shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10. CHANGES TO INSUREDS

### A. Transactions

In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* paragraph of Clause 8. *Discovery*.

### B. Subsidiary Additions

In addition to the definition of **"Subsidiary"** set forth in Clause 13. *Definitions*, **Subsidiary** also means any for-profit entity: (i) that is not formed as a partnership, (ii) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (iii) whose assets amount to:

(1) less than 25% of the total consolidated assets of each and every **Organization** as reported in the **Named Entity's** most recent public filing; or

(2) 25% or more of those total consolidated assets, but such entity shall be a **"Subsidiary"** only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the **"Auto-Subsidiary Period"**);

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period.**

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary.**

### C. Former Subsidiaries

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this policy but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries.**

### D. Scope Of Subsidiary Coverage

Coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this policy.

 © Chartis Inc. All rights reserved.

Executive Edge



## 11.   APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

### B. Renewal Application Procedure

A written renewal application form is not required in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

### C. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this policy for **Loss** under Insuring Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or otherwise, once the premium has been paid.

### D. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person.**

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the  **Insurer** or included within the **Application.**

     © Chartis Inc. All rights reserved.

Executive Edge



## 12. GENERAL TERMS AND CONDITIONS

### A. Payments And Obligations Of Organizations And Others

#### 1. INDEMNIFICATION BY ORGANIZATIONS

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization** within an applicable Retention, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**. The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.

#### 2. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. Such insurance as is provided by this policy shall apply as primary to any personal "umbrella" excess liability insurance purchased by an **Insured Person**.

With respect to **Employment Practices Claims**, such insurance as is provided by this policy shall apply only as excess of any other valid and collectible employment practices liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. If according to the terms and conditions of any employment practices liability insurance policy providing coverage for an **Employment Practices Claim** made against an **Insured**, an insurer issuing such policy is not liable for **Loss**, then the **Insurer** shall be liable for payment of the portion of such **Loss** constituting covered **Loss** under this policy (specifically excess of any other valid and collectible employment practices liability insurance providing coverage for such **Loss**).

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other insurance company affiliate thereof (**"Other Policy"**) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount recoverable under such **Other Policy** for loss incurred in connection with such **Claim.**

#### 3. SUBROGATION

To the extent of any payment under this policy, the **Insurer** shall be subrogated to all of the **Organizations'** and **Insureds'** rights of recovery. Each **Organization** and each **Insured Person** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly or in the name of the **Organization** or any **Insured Person**.

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless the Conduct Exclusion applies with regard to such **Insured**.

                           © Chartis Inc. All rights reserved.

Executive Edge



### 4. RECOVERY OF LIMITS

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability.**

### B. Cancellation

The **Named Entity** may cancel this policy at any time by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity Address**, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Named Entity** shall cancel this policy, the **Insurer** shall retain the *pro rata* proportion of the premium herein.

### C. Notice And Authority

The **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of a **Claim, Pre-Claim Inquiry**, **Crisis** or circumstance, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**; provided, however, that the foregoing shall not limit the ability of an **Organization** or **Insured** to provide notice of a **Claim, Pre-Claim Inquiry**, **Crisis** or circumstance in accordance with Clause 7. *Notice And Reporting*, or to elect discovery and pay the **Additional Premium Amount** (as defined in Clause 8. *Discovery*).

### D. Currency

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

### E. Assignment

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer.**

                    © Chartis Inc. All rights reserved.

Executive Edge



### F. Disputes

#### 1. ALTERNATIVE DISPUTE RESOLUTION

**ADR Options**
All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR. In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

**Mediation**
In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

**Arbitration**
In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

**ADR Process**
*Selection of Arbitrator(s) or Mediator*: The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the **State of Formation** of the **Named Entity**. Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the **Named Entity Address**. The **Named Entity** shall act on behalf of each and every **Insured** under this *Alternative Dispute Resolution Clause*. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

                    © Chartis Inc. All rights reserved.

Executive Edge



### 2. ACTION AGAINST INSURER

Except as provided in Clause 12.F.1. *Alternative Dispute Resolution*, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer.**

Any **Insured** or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, his or her spouse or legally recognized domestic partner, any **Organization** or any legal representative of the foregoing.

### G. Spousal, Domestic Partner And Legal Representative Extension

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

### H. Conformance To Law

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**. Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

### I. Headings

The descriptions in the headings and the Guide of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

  © Chartis Inc. All rights reserved.

Executive Edge



## 13. DEFINITIONS

Terms with **"Bold"** typeface are used in this policy with the meanings and values ascribed to them below and/or in the Declarations:

**Application**          means:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy;

(2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; and

(3) each and every public filing by or on behalf of an **Organization** made with the SEC, including but not limited to the **Organization's** Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the 12 month period immediately preceding the inception of the **Policy Period.**

**Asset Protection Costs**          means reasonable and necessary fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim**          means:

(1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

(3) an **Insured Person Investigation**;

(4) a **Derivative Demand**;

(5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition.**

**"Claim"** shall include any **Securities Claim** and any **Employment Practices Claim.**

**Crisis**          has the meaning as defined in the CrisisFund® Appendix attached to this policy.

**CrisisFund®**          means in the case of all **Crisis Loss**, including **Delisting Crisis Loss**, $100,000 for all **Crisis Loss** in the aggregate for all **Crises** first occurring during the **Policy Period** or any applicable **Discovery Period.**

Executive Edge



| | |
|---|---|
| **Crisis Loss** | has the meaning as defined in the CrisisFund® Appendix attached to this policy. **"Delisting Crisis Loss"** means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in the CrisisFund ® Appendix). |
| **Defense Costs** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the cost of **E-Discovery Consultant Services** and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from: |

(1) the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**; or

(2) an **Insured Person** lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or (ii) appealing any order or other grant of **Extradition** of that **Insured Person.**

**Defense Costs** shall not include: (i) **Derivative Investigation Costs,** (ii) **Pre-Claim Inquiry Costs**, or (iii) the compensation of any **Insured Person.**

| | |
|---|---|
| **Derivative Demand** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive.** |
| **Derivative Investigation** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **Derivative Investigation Costs** | means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a **Derivative Investigation. Derivative Investigation Costs** shall not include the compensation of any **Insured Person.** |
| **Derivative Suit** | means a lawsuit purportedly brought derivatively on behalf of an **Organization** by a shareholder of such **Organization** against an **Executive** of the **Organization.** |
| **E-Discovery Consultant Services** | means solely the following services performed by an **E-Consultant Firm:** |

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information (**"E-Discovery"**);

© Chartis Inc. All rights reserved.

Executive Edge



(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Consultant Firm** that the **Insured, Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of the **Securities Claim**.

**Employee**   means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

**Employment Practices Claim**   means a Claim alleging any:

(1) **Employment Practices Violation**; or

(2) **Third-Party EPL Violation**.

**Employment Practices Retention**   means the Retention applicable to **Loss** that arises out of an **Employment Practices Claim**.

**Employment Practices Violation**   means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** of the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure; or

   © Chartis Inc. All rights reserved.

Executive Edge



(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of an **Organization** or an **Outside Entity**, or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

| | |
|---|---|
| **Enforcement Body** | means: (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (ii) the enforcement unit of any securities or commodities exchange or other self-regulatory organization. |
| **Executive** | means any: |

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity.**

| | |
|---|---|
| **Extradition** | means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **Extradition Costs** | means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person.** |
| **Foreign Jurisdiction** | means any jurisdiction, other than the United States of America or any of its territories or possessions. |
| **Foreign Policy** | means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the **Insurer** or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy.  If more than one such policy exists, then **"Foreign Policy"** means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any of its affiliates in that **Foreign Jurisdiction**.  The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage. |
| **Insured** | means any: |

(1) **Insured Person**; or

(2) **Organization.**

---

 © Chartis Inc. All rights reserved.

Executive Edge



| | |
|---|---|
| **Insured Person** | means any: |
| | (1) **Executive** of an **Organization**; |
| | (2) **Employee** of an **Organization**; or |
| | (3) **Outside Entity Executive**. |
| **Insured Person Investigation** | means any civil, criminal, administrative or regulatory investigation of an **Insured Person**: |
| | (1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding; |
| | (2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or |
| | (3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction**. |
| | Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such. |
| **Liberty Protection Costs** | means: |
| | (1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or |
| | (2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**; and, in either case, no **Claim** has been made and no **Pre-Claim Inquiry** is known. |
| **Loss** | means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs**, **Crisis Loss**, **Derivative Investigation Costs**, **Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) cleanup costs relating to hazardous materials, pollution or product defects; (6) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities  Act  of |

        © Chartis Inc. All rights reserved.

Executive Edge



1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

**Management Control**

means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss**

means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization.**

**Organization**

means:

(1) the **Named Entity**;

(2) each **Subsidiary**; and

(3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

 © Chartis Inc. All rights reserved.

Executive Edge



| | |
|---|---|
| **Outside Entity** | means any: (1) not-for-profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy. |
| **Outside Entity Executive** | means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy. |
| | In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made.  In the event no notice of any such determination is given to the **Insurer** within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction. |
| **Personal Reputation Crisis** | means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body.** |
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a **Crisis Firm** (as defined in the CrisisFund® Appendix attached to this policy) retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis**.  **"Personal Reputation Expenses"** shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization.** |
| **Policy Period** | means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy. |
| **Pre-Claim Inquiry** | means any pre-**Claim**: |

(1) verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

    (i)  **Enforcement Body**; or

    (ii)  **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

        (A)  arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

        (B)  as part of its **Derivative Investigation**; and

℗ Chartis Inc. All rights reserved.

Executive Edge



(2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization.**

"**Pre-Claim Inquiry**" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

| | |
|---|---|
| **Pre-Claim Inquiry Costs** | means the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party **.** |
| **Related Claim** | means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an **Insured Person.** |
| **Related Pre-Claim Inquiry** | means a **Pre-Claim Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Pre-Claim Inquiry** received by an **Insured Person.** |
| **Retaliation** | means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Organization** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Organization** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower " law; or (iv) strikes of an **Employee** of the **Organization** or an **Outside Entity.** |

 © Chartis Inc. All rights reserved.

Executive Edge



| **Securities Claim** | means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**: |
|---|---|

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit.**

Notwithstanding the foregoing, the term **"Securities Claim"** shall include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person.**

| **Securities Retention** | means the Retention applicable to **Loss** (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation.** |
|---|---|

| **SOX 304 Costs** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a). |
|---|---|

| **Subsidiary** | means: |
|---|---|

(1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has or had **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization.**

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization.**

104123 (04/10)      25      © Chartis Inc. All rights reserved.

Executive Edge



| | |
|---|---|
| **Third-Party EPL Violation** | means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (2) and (3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Insured Person** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers. |
| **Transaction** | means: |

(1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

(2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or

(3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity.**

| | |
|---|---|
| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction. |
| **Wrongful Act** | means: |

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation:**

    (i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

    (ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

    (iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim.**

 © Chartis Inc. All rights reserved.

# CRISISFUND® APPENDIX

## I. DEFINITIONS

(a) **"Crisis"** means:

   (1) a **Delisting Crisis**; or

   (2) one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a **"Material Effect on an Organization's Common Stock Price"**:

     (i) *Negative earning or sales announcement*
     The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

     (ii) *Loss of a patent, trademark or copyright or major customer or contract*
     The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

     (iii) *Product recall or delay*
     The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

     (iv) *Mass tort*
     The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

     (v) *Employee layoffs or loss of key executive officer(s)*
     The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

     (vi) *Elimination or suspension of dividend*
     The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

     (vii) *Write-off of assets*
     The public announcement that an **Organization** intends to write off a material amount of its assets.

     (viii) *Debt restructuring or default*
     The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

     (ix) *Bankruptcy*
     The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

     (x) *Governmental or regulatory litigation*
     The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi) _Unsolicited takeover bid_

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** of the **Named Entity.**

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted.

(b) "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "CrisisFund®" link. Solely for **Delisting Crises**, "**Crisis Firm**" shall also include any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to handle **Securities Claims**. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer.**

(c) "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1) the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2) the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3) travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis.**

(d) "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis.**

(e) "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange.**

(f) "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.   EXCLUSIONS

The term **Crisis** shall not include any event relating to any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

## ENDORSEMENT# *1*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CALIFORNIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added any supersedes any provision to the contrary:

<u>CANCELLATION</u>

The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

    (1)    Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

    (2)    A judgment by a court or an administrative tribunal that the named Insured has violated any law of this state of or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

    (3)    Discovery of fraud or material misrepresentation by either of the following:

        a)    The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

        b)    The named Insured or his or her representative in pursuing a claim under the policy.

    (4)    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

    (5)    Failure by the named Insured or Other Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

    (6)    A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

◈ All rights reserved.
### *END 001*

## ENDORSEMENT# *1*    (continued)

(7)   A determination by the commissioner that a continuation of the policy coverage could place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

(8)   A change by the named Insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named Insured at least thirty (30) days prior to the effective date of cancellation.  Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

<u>CONDITIONAL RENEWAL AND NONRENEWAL</u>

If the Insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the Insurer shall mail or deliver to the producer of record and the named Insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1)   If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the insurance group.

(2)   If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3)   If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)   If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

(5)   If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)   If the Insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the Insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the Insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.

**END 001**

**ENDORSEMENT#** *2*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
### (WITH SECURITIES CLAIM CARVE-OUT)

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to the **Organization's** or any **Insured's** performance of or failure to perform professional services for others, or any acts, errors or omissions relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to any **Securities Claim**, provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the  **Organization** or any **Insured.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 002*

104141 (4/10)                                        1

**ENDORSEMENT#** *3*

This endorsement, effective *12.01am*    *November 29, 2012*    forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    The following paragraph is added to the end of Clause 5. RETENTION:

    If an **Organization** fails or refuses to advance, pay or indemnify covered **Indemnifiable Loss** of an **Insured Person** within an applicable Retention, then solely to the extent an insurer agrees to pay or pays such **Loss** pursuant to the terms and conditions of a Side A-Excess DIC Insurance Policy, the **Insurer** shall recognize that the **Side A-Excess DIC Insurance Policy** payments erode (contribute to and reduce) the applicable Retention amount.

2.    As a precondition to such recognition of the erosion of the Retention amount, an **Insured** shall provide the **Insurer** with written proof, to the **Insurer's** satisfaction, of the payment of such **Loss** under the **Side A-Excess DIC Insurance Policy.**

3.    Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization.**

4.    "**Side A-Excess DIC Insurance Policy**" means any insurance policy written specifically as excess over this policy that provides "Side A" (non-indemnifiable or non-indemnified loss) coverage with difference-in-conditions features.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.
*END 003*

**ENDORSEMENT#** *4*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number    *01-424-44-41*
issued to *CERADYNE, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECURITIES CLAIM DEFINITION - COMMON LAW

In consideration of the premium charged, it is hereby understood and agreed that the policy's definition of **"Securities Claim,"** is deleted in its entirety and replaced with the following:

**"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

(1)   alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

   (a)   brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

   (b)   brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization**; or

(2)   which is a **Derivative Suit**.

Notwithstanding the foregoing, the term **"Securities Claim"** shall:

(1)   include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and

(2)   not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.

*END 004*

**ENDORSEMENT#** *5*

This endorsement, effective *12.01am      November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PRE-CLAIM INQUIRY AMENDED
## COST OF PRODUCING DOCUMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of **"Pre-Claim Inquiry Costs"** in its entirety and replacing it with the following:

| | |
|---|---|
| **Pre-Claim Inquiry Costs** | means the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body** and the cost of such **Insured Person** in producing documents in his or her possession, but excluding any compensation of any **Insured Person.** |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ Chartis Inc. All rights reserved.

*END 005*

106819 (9/10)                    1

**ENDORSEMENT#** *6*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
WITH EXCEPTION FOR NON-INDEMNIFIABLE LOSS**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

  (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom;

  (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**;

  (3)   the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

  (4)   **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**; or

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

  (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

Notwithstanding the foregoing, this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**.

As used in this endorsement:

**"Cleanup Costs"** means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**, **Hazardous Properties** and **Waste**.

◊ Chartis Inc. All rights reserved.
*END 006*

**ENDORSEMENT#** *6*     (continued)

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear facility**" means:

(a)   any nuclear reactor;

(b)   any equipment or device designed or used for:
(1)   separating the isotopes of uranium or plutonium,
(2)   processing or utilizing spent fuel, or
(3)   handling, processing or packaging wastes;

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material**," "**Special Nuclear Material**," and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.
*END 006*

ENDORSEMENT# *7*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAIM DEFINITION AMENDED
### REQUESTS TO TOLL STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  In Clause 13. DEFINITIONS, the definition of **"Claim"** shall be amended by adding the
    following subparagraph (6) as follows:

    (6)     the receipt by an **Insured** of any written request to toll a period or statute of
            limitations which may be applicable to any **Claim** that may be made for any
            **Wrongful Act** of any **Insured.**

2.  In Clause 7. NOTICE AND REPORTING, the last sentence of subparagraph (c), entitled
    *"Relation Back to Reported Circumstances Which May Give Rise to a Claim,"* is deleted
    and replaced with the following:

    In order to be effective, notification of circumstances must specify the facts,
    circumstances, nature of the alleged Wrongful Act anticipated and reasons for
    anticipating such Claim, with full particulars as to dates, persons and entities
    involved.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
                    AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 007*

106013 (7/10)                    1

## ENDORSEMENT# *8*

This endorsement, effective *12.01am*   *November 29, 2012*   forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ERISA EXCLUSION AMENDED TO APPLY
### SOLELY TO COMPANY BENEFIT PLANS

In consideration of the premium charged it is hereby understood and agreed that Clause 4.B *Exclusions*  is amended by deleting Exclusion (6) in its entirety and replacing it with the following:

(6) *ERISA*   for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law (**"ERISA"**) with respect to any benefit plans sponsored (solely or jointly) by the **Organization**; or

It is further understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the **ERISA** with respect to any benefit plan not sponsored (solely or jointly) by the **Organization**:

(1)    for discrimination based upon local, state or federal law, statutory or common, including but not limited to **ERISA**;

(2)    for failure to fund the a benefit plan in accordance with **ERISA** or the plan instrument or the failure to collect contributions owed to the plan;

(3)    for plan benefits, or that portion of any settlement or award in an amount equal to such plan benefits;

(4)    alleging, arising out of, based upon or attributable to any failure or omission on the part of any **Insured(s)** to effect and maintain insurance or bonding for plan property, assets or obligations;

(5)    for any **Wrongful Act** if as of *November 29, 2012* the **Insured(s)**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**.

Furthermore, coverage as is afforded by virtue of this endorsement shall be specifically excess of any insurance in force, including but not limited to any insurance in force for **ERISA** claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations.

Further, if said other insurance in force as respects any such coverage is provided by the **Insurer** or any other insurance company affiliate thereof (**"Other Policy"**), (or would be provided but for the application of the retention amount, the exhaustion of the limit of liability or the failure to submit a claim), then the **Limit of Liability** for all **Loss** by virtue of this endorsement with respect to any such claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations shall be reduced by the limit of liability as set forth on the Declarations of such **Other Policy** provided to

◊ Chartis Inc. All rights reserved.
### *END 008*

## ENDORSEMENT#  *8*     (continued)

such claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED  REPRESENTATIVE

◊ Chartis Inc. All rights reserved.

*END 008*

ENDORSEMENT# *9*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF EXCLUSIONS AMENDED
## GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.A. *Full Severability of Exclusions For Insured Persons* is amended by adding the following to the end thereof:

> Provided, however, that the **Wrongful Acts** of, any past, present or future General Counsel shall not be imputed to an **Organization** if the General Counsel took timely corrective and/or remedial action upon learning of the **Wrongful Acts** upon which said exclusions are predicated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 009*

ENDORSEMENT# *10*

This endorsement, effective *12.01am*        *November 29, 2012*        forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SEVERABILITY OF THE APPLICATION AMENDED
### (ADVANCEMENT)

In consideration of the premium charged, it is hereby understood and agreed that the
following paragraph is added to Clause 11.D. *Severability of the Application* at the end thereof:

> Solely with respect to this *Severability of the Application Clause*, the **Insurer** agrees to
> advance payments of **Loss** unless and until an order by a court of competent
> jurisdiction provides either that such advancement is not required or that coverage
> is void *ab initio*, subject to the condition that such advance payments by the **Insurer**
> shall be repaid to the **Insurer** by the **Organization** as soon as reasonably
> practicable after an order provides that such advancement is not required or that
> coverage is void *ab initio*. Clause 12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* of this
> policy shall not apply to this paragraph.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.
*END 010*

**ENDORSEMENT#** *11*

This endorsement, effective *12.01am*    *November 29, 2012*    forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SHADOW DIRECTORS COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that the term "**Executive**" is amended to include any natural person who, as a consequence of being a director, officer or **Employee** of an **Organization,** is deemed a "shadow director" as defined under Section 741 of the United Kingdom's Companies Act 1985, as amended but solely for **Wrongful Acts** committed in his or her respective capacity as a "shadow director", of any **Subsidiary** of the **Company** that is incorporated and/or domiciled in the United Kingdom or the Republic of Ireland.

For the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the persons afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify such persons pursuant to law (common or statutory), contract, or the charter or by-laws of the **Organization** (which are hereby deemed to adopt the broadest provision of the law which determines, or defines such rights of indemnity). The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

Solely for the purposes of this endorsement the term **Continuity Date** means the effective date of this endorsement.

Only as respects any additional coverage granted by this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** made against an **Insured**:

    (1)  alleging, arising out of, based upon or attributable to any pending or prior litigation as of the **Continuity Date** listed above, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation; and

    (2)  alleging any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.

*END 011*

**ENDORSEMENT#** *12*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**TRANSACTION AMENDED**
**DELETE SUBPARAGRAPH (3)**

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of **Transaction** and replacing it with
the following:

**Transaction**        means:

(1) the **Named Entity** consolidating with or merging into another
    entity such that the **Named Entity** is not the surviving entity,
    or selling all or substantially all of its assets to any other
    person or entity or group of persons or entities acting in
    concert; or

(2) any person or entity or group of persons or entities acting in
    concert acquiring **Management Control** of the **Named Entity.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 012*

106010 (7/10)                      1

ENDORSEMENT# *13*

This endorsement, effective *12.01am*   *November 29, 2012*   forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONDUCT EXCLUSIONS AMENDED
## FINAL, NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(1) *Conduct Exclusion* is deleted in its entirety and replaced with the following:

(1)   *Conduct*   arising out of, based upon or attributable to any:

    (a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or

    (b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any underlying proceeding;

provided, however:

    (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

    (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 013*

107034 (10/10)                    1

**ENDORSEMENT#** *14*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ENTITY V. INSURED EXCLUSION AMENDED
### WHISTLEBLOWER CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(5) *Entity v. Insured Exclusion* is amended by adding the following to the end thereof:

> With respect to this *Entity v. Insured Exclusion*, the term "materially assisted " shall not be triggered by any **Insured Person** engaging in protected "whistleblower " activity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 014*

106824 (9/10)                          1

**ENDORSEMENT#** *15*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.G. *Spousal, Domestic Partner And Legal Representative Extension* is deleted in its entirety and replaced with the following:

### G. *Spousal, Domestic Partner And Legal Representative Extension*

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner.   This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, or any **Claim** against a trust or estate planning vehicle of an **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 015*

107317 (11/10)                                1

**ENDORSEMENT#** *16*

This endorsement, effective *12.01am    November 29, 2012*    forms a part of
policy number    *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DISCOVERY CLAUSE AMENDED
## DELETE "OR REPLACED"

In consideration of the premium charged, it is hereby understood and agreed that in Clause
8. DISCOVERY, the section entitled *"Bilateral Discovery Options"* is deleted in its entirety
and replaced with the following:

*Bilateral Discovery*
*Options*

Except as indicated below, if the **Named Entity** shall cancel or
the **Named Entity** or the **Insurer** shall refuse to renew this
policy, the **Insureds** shall have the right to a period of one to
six years following the effective date of such cancellation or
nonrenewal (the **"Discovery Period"**), upon payment of the
respective **"Additional Premium Amount"** described below, in
which to give to the **Insurer** written notice pursuant to Clause
7(a) and Clause 7(c) of the policy of: (i) **Claims** first made
against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an
**Insured Person**; and (iii) circumstances of which an
**Organization** or an **Insured** shall become aware, in any such
case, during said **Discovery Period** and solely with respect to a
**Wrongful Act** that occurs prior to the end of the **Policy Period.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 016*

106006 (7/10)                1

**ENDORSEMENT#** *17*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## APPLICATION AND UNDERWRITING AMENDED
## RELIANCE AND INCORPORATION

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended by deleting Clause 11.A. *Application And Reliance* in its entirety and replacing it with the following:

   A. *Application And Reliance*

   The **Insurer** has relied upon the statements, warranties and representations contained in the **Application,** and all such statements, warranties and representations are to be considered as incorporated into this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 017*

107033 (10/10)                    1

<u>ENDORSEMENT#</u> *18*

This endorsement, effective *12.01am       November 29, 2012*       forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### BANKRUPTCY WAIVER ADDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.C. *Bankruptcy And Insolvency* is amended by adding the following to the end thereof:

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively **"Bankruptcy Law"**) then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

### *END 018*

**ENDORSEMENT#** *19*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED
### OTHER LAW

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of **"UK Corporate Manslaughter Act
Defense Costs"** in its entirety and replacing it with the following:

| | |
|---|---|
| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute or other law in any jurisdiction. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ Chartis Inc. All rights reserved.

*END 019*

106828 (9/10)                         1

**ENDORSEMENT#** *20*

This endorsement, effective *12.01am*   *November 29, 2012*   forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXECUTIVE EDGE**® **RENEWAL TRANSITION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  *Liberalization Right*:  If, in relation to a **Claim** first made during the **Policy Period** or **Discovery Period** of this policy, the **Named Entity** believes the terms and conditions of the **Prior Policy** provide coverage for **Loss** that is not provided under the terms and conditions of this policy, the **Named Entity** may elect to have all or part of that **Claim** adjusted according to the terms and conditions of the **Prior Policy**, except as provided in Clause 3. below.  To do so, the **Named Entity** must notify the **Insurer** in writing of that election and the language of the **Prior Policy** that the **Named Entity** believes provides the coverage that is not provided under this policy for such   **Claim.**

2.  *Prior Policy*:  **"Prior Policy"** means the immediate predecessor policy to this policy, but only if that predecessor policy was issued by the **Insurer** to the **Named Entity** and was not written upon the **Insurer's** Executive Edge policy form.  Otherwise, this endorsement is null and void.

3.  *Liberalization Exceptions* :

    (a)   No coverage shall be provided for any **Claim** or other matter which was the subject of any notice given under the  **Prior Policy** or any preceding policy;

    (b)   in no event will a **Claim** be adjusted pursuant to the fourth paragraph of Clause 6. RETENTION CLAUSE of the **Prior Policy,** commonly known as the "No Liability Retention Waiver"; and

    (c)   the liberalization features of this endorsement shall not apply to any of the following items:

        (1)   the **Policy Period**, **Limit of Liability,** Retention amounts and **Continuity Dates** of this policy; and

        (2)   Exclusion (7) *Compensation & Labor Liability* of this policy; and

        (3)   the definition of **"Loss"** of this policy; and

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 020**

**ENDORSEMENT#** *21*

This endorsement, effective *12.01am*       *November 29, 2012*       forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXTRADITION AMENDED
SOUGHT TO BE SURRENDERED**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of **"Extradition"** in its entirety and replacing it with the following:

**Extradition**          means any formal process by which an **Insured Person** located in any country is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 021*

106829 (9/10)                    1

**ENDORSEMENT#** *22*

This endorsement, effective *12.01am*        *November 29, 2012*        forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## RECOVERY OF LIMITS AMENDED
## DELETE LAST SENTENCE

In consideration of the premium charged, it is hereby understood and agreed that Clause
12.A.4. *RECOVERY OF LIMITS* is deleted in its entirety and replaced with the following:

   4. *RECOVERY OF LIMITS*

      In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will
      reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its
      costs incurred in administering and obtaining such recovery.  The **Insurer** assumes
      no duty to seek a recovery of any amounts paid under this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 022*

106818 (9/10)                                    1

**ENDORSEMENT#** *23*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## LOSS AMENDED
## DELETE COURT ORDER WORDING

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the last sentence of the first paragraph of the definition of **Loss** and replacing it with the following:

> Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss and shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 023*

**ENDORSEMENT#** *24*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONDUCT EXCLUSIONS AMENDED
### PERSONAL PROFIT AND FINANCIAL ADVANTAGE

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(1) *Conduct Exclusion* is amended by deleting subparagraph (a) in its entirety and replacing it with the following:

    (a) remuneration, personal profit or other financial advantage to which the **Insured** was not legally entitled; or

    ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 024*

106825 (9/10)                    1

ENDORSEMENT# *25*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### GLOBAL LIBERALIZATION AMENDED
### DEFINE WORLDWIDE EFFECT

In consideration of the premium charged, it is hereby understood and agreed that Clause 2.C. *Worldwide & Cross-Border* is amended by deleting the second sentence of the *Global Liberalization Clause* in its entirety and replacing it with the following:

This *Global Liberalization Clause* shall not apply to any provision of any policy that has **Worldwide Effect.**

**"Worldwide Effect"** means the provision applies regardless of any conflicting provision in the other policy.  The following clauses shall be deemed to have **Worldwide Effect**: any provision in this policy addressing the limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have **Worldwide Effect**, and any other clause that the **Insurer** reasonably determines to have **Worldwide Effect.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 025*

106830 (9/10)                    1

<u>**ENDORSEMENT#**</u> *26*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DODD-FRANK 954 COSTS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  Clause 2.A Executive Protection Suite is amended by deleting subparagraph (1) and
    replacing it with the following:

    (1) **SOX 304 Costs** and **Dodd-Frank 954 Costs**;

2.  Clause 13. DEFINITIONS is amended by the addition of the following definition:

| | |
|---|---|
| **Dodd-Frank 954 Costs** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Executive** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. **Dodd-Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to Section 954. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 026*

108595 (4/11)                          1

ENDORSEMENT# *27*

This endorsement, effective *12.01am*       *November 29, 2012*       forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SOX 304 COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of **"SOX 304 Costs"** in its entirety and replacing it with the following:

**SOX 304 Costs**        means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** provided by this coverage extension do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 027*

106822 (9/10)                    1

## ENDORSEMENT# *28*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE AND REPORTING AMENDED
### 90-DAY POST POLICY REPORTING PERIOD

In consideration of the premium charged, it is hereby understood and agreed that Clause 7.(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis* is amended by deleting the last sentence thereof and replacing it with the following:

> In all such events, notification must be provided no later than 90 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 028*

108598 (4/11)                              1

**ENDORSEMENT#** *29*

This endorsement, effective *12.01am    November 29, 2012*     forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALTERNATIVE DISPUTE RESOLUTION AMENDED**
**WAITING PERIOD REVISED FOR EXPIRATION OF STATUTE OF LIMITATIONS**

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* is amended by deleting the paragraph entitled, *Mediation*, in its entirety and replacing it with the following:

| | |
|---|---|
| Mediation | In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 60 days shall have elapsed from the date of the termination of the mediation.  In the event, however, that the applicable statute of limitations shall expire during such 60 day period, the Insurer and Insureds agree to toll such statute of limitations to a date at least 60 days after the end of the initial 60 day period. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 029*

108589 (4/11)                                        1

**ENDORSEMENT#** *30*

This endorsement, effective *12.01am    November 29, 2012*    forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OTHER INSURANCE AND INDEMNIFICATION AMENDED
### DELETE ANTI-STACKING

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.A.2. *Other Insurance and Indemnification* is amended by deleting the third paragraph thereof and replacing it with the following:

> In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 030*

**ENDORSEMENT#** *31*

This endorsement, effective *12.01am*    *November 29, 2012*    forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CRISISPLUS ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that he policy is
hereby amended as follows:

I.   **CRISISFUND® AMENDED**

(1)   Solely for the purposes of a **Financial Statement Crisis**, the CrisisFund® Appendix
is hereby amended as follows:

(i)   Definition (a) **Crisis** shall also mean:

(3)   a **Financial Statement Crisis**.

(ii)   Definition (b) **Crisis Firm** is hereby amended by adding the following at the
end thereof:

(b)   Solely for **Financial Statement Crisis**, "**Crisis Firm(s)**" shall also include
any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to
handle **Securities Claims** and/or any public accounting firm.

(iii)   Definition (d) **Crisis Services** is hereby deleted in its entirety and replaced by
the following:

"**Crisis Services**" means any legal or accounting services performed by a
**Crisis Firm(s)** in investigating and responding to a **Financial Statement
Crisis**.

(iv)   The following additional definitions are hereby added:

"**Financial Statement Crisis**" means the written public announcement by an
**Organization** of the need or potential need for a restatement(s) of an
**Organization's** previously publicly filed financial statements; provided
however, that **Financial Statement Crisis** shall not include any
announcements regarding restatement(s) resulting, in whole or in part, from a
change in any rule, law or statute relating to financial reporting (including but
not limited to any change in Generally Accepted Accounting Principles);
further provided that payment of any **Crisis Loss** under this policy shall not
waive any of the **Insurer's** rights under this policy or at law.

"**Financial Statement Crisis Loss**" means a **Crisis Loss** resulting solely from
a **Financial Statement Crisis**.

II.   **DEFINITION OF EXECUTIVE AMENDED**

In Clause 13. DEFINITIONS, the Definition of **Executive** is hereby amended to include the
following:

◊ Chartis Inc. All rights reserved.
*END 031*

### ENDORSEMENT# *31*   (continued)

(4)   **Executive** as defined in (1)-(3) above or any **Employee** of an **Organization** serving as a past, present or future member of any internal committee established by and for an **Organization**, including but not limited to an **Organization's** "audit committee," as that committee is described in the Securities and Exchange Commission Release No. 34-42266-Audit Committee Disclosure Rule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ Chartis Inc. All rights reserved.
*END 031*

<u>ENDORSEMENT#</u> *32*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CONTROL PERSON CAPACITY**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  Clause 13. DEFINITIONS is amended by the addition of the following definition:

| | |
|---|---|
| **Controlling Person** | means any **Executive** that controls an **Organization** within the meaning of Section 15 of the Securities Act of 1933 (as amended) or Section 20(a) of the Securities Exchange Act of 1934 (as amended) or any similar law. |

2.  Clause 13. DEFINITIONS is amended by deleting subparagraph (1)(i) of the definition of
    **Wrongful Act** and replacing it with the following:

    (i)  with respect to any **Executive** of an **Organization**, (a) by such **Executive** in his or
         her capacity as such, (b) by such **Executive** in his or her capacity as a
         **Controlling Person**; or (c) any matter claimed against such **Executive** solely by
         reason of his or her status as such;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 032*

108592 (4/11)                    1

ENDORSEMENT# *33*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### APPLICATION AMENDED
### PUBLIC FILINGS

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting subparagraph (1) of the definition of **Application** and replacing it with the following:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy; provided that public filings by or on behalf of an **Organization** made with the SEC shall only include those as set forth in subparagraph (3) below;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 033*

ENDORSEMENT# *34*

This endorsement, effective *12.01am*        *November 29, 2012*        forms a part of
policy number    *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ADVANCEMENT AMENDED
NOT IN DEFAULT OF PAYMENT
RETURN OF PAYMENTS**

In consideration of the premium charged, it is hereby understood and agreed that Clause
3.A. *Advancement* is deleted in its entirety and replaced with the following:

   A. *Advancement*

      If for any reason (including but not limited to insolvency) an **Organization** fails or
      refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the
      applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf
      of the **Insured Person** until either (i) an **Organization** agrees to make, and is not in
      default of making, such payments, or (ii) the Retention has been satisfied.   In no
      event shall any such advancement by the **Insurer** relieve any **Organization** of any
      duty it may have to provide advancement, payment or indemnification to any
      **Insured Person.**

      Advancement, payment or indemnification of an **Insured Person** by an **Organization**
      is deemed "failed" if it has been requested by an **Insured Person** in writing and has
      not been provided by, agreed to be provided by or acknowledged as an obligation by
      an **Organization** within 60 days of such request; and advancement, payment or
      indemnification by an **Organization** is deemed "refused" if an **Organization** gives a
      written notice of the refusal to the **Insured Person**.   Advancement, payment or
      indemnification of an **Insured Person** by an **Organization** shall only be deemed
      "failed" or "refused" to the extent such advancement, payment or indemnification
      is not provided, or agreed to be provided, or acknowledged by and collectible from
      an **Organization**.   Any payment or advancement by the **Insurer** within an applicable
      Retention shall apply towards the exhaustion of the **Limits of Liability,** but the **Limit
      of Liability** shall be restored to the extent that any such payments are subsequently
      returned or repaid to the **Insurer.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 034*

108587 (4/11)                    1

<u>**ENDORSEMENT#**</u> *35*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LIBERTY PROTECTION COSTS AMENDED**
**DELETE NO CLAIM MADE OR PRE-CLAIM INQUIRY KNOWN REQUIREMENT**

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (2) of the definition of **Liberty
Protection Costs** and replacing it with the following:

  (2) reasonable and necessary premiums (but not collateral) consented to by the
  **Insurer** and incurred by an **Insured Person** for a bond or other financial
  instrument to guarantee the contingent obligation of the **Insured Person** for a
  specified amount required by a court that are incurred or required outside the
  United States of America during the **Policy Period**, if such premiums: (i) arise
  out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of
  such **Insured Person's** status as an **Executive** or **Employee** of an **Organization.**

  ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ Chartis Inc. All rights reserved.
*END 035*

106831 (9/10)                    1

**ENDORSEMENT#** *36*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LOSS AMENDED
CLEANUP COSTS**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting subparagraph (5) of the first paragraph of the definition of **Loss** and replacing it with the following:

(5) cleanup costs relating to hazardous materials, pollution or product defects that result in the release of hazardous materials or pollutants;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 036*

106832 (9/10)                      1

ENDORSEMENT# *37*

This endorsement, effective *12.01am*   *November 29, 2012*   forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PRE-CLAIM INQUIRY AMENDED**
**CHANGE "AND" TO "OR"**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting subparagraph (1)(ii)(B) of the definition of **Pre-Claim Inquiry** in its entirety and replacing it with the following:

(B) as part of its **Derivative Investigation**; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 037*

108604 (4/11)                     1

<u>ENDORSEMENT#</u> *38*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF EXCLUSIONS AMENDED
## TOP 3 OF NAMED ENTITY

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.A. *Full Severability of Exclusions For Insured Persons* is deleted in its entirety and replaced with the following:

    A. *Full Severability of Exclusions for Insured Persons*

       In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of the **Named Entity** shall be imputed to an **Organization.**

     ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 038*

108606 (4/11)            1

<u>ENDORSEMENT#</u> *39*

This endorsement, effective *12.01am*    *November 29, 2012*    forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFENSE AND SETTLEMENT AMENDED
### 60 DAYS TO ADVANCE DEFENSE COSTS

In consideration of the premium charged, it is hereby understood and agreed that Clause 9.A.(2) *Advancement* is amended by deleting the first sentence thereof in its entirety and replacing it with the following:

> Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 60 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 039*

ENDORSEMENT# *40*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PENDING AND PRIOR LITIGATION EXCLUSION AMENDED
SUBSTANTIALLY**

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(2) *Pending & Prior Litigation Exclusion* is deleted in its entirety and replaced with the
following:

> alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any
> pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or
> investigation of which any **Insured** had notice; or alleging or derived from the same
> or substantially the same facts as alleged in such pending or prior litigation or
> administrative or regulatory proceeding or investigation;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 040*

108602 (4/11)                    1

**ENDORSEMENT#** *41*

This endorsement, effective *12.01am*        *November 29, 2012*        forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PERSONAL INJURY EXCLUSION AMENDED
UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK**

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(3) *Personal Injury Exclusion* shall not apply to **UK Corporate Manslaughter Act
Defense Costs.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 041*

108603 (4/11)                    1

ENDORSEMENT# *42*

This endorsement, effective *12.01am*    *November 29, 2012*    forms a part of
policy number    *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**ALLOCATION CLAUSE AMENDED
COVERED AND UNCOVERED PARTIES AND MATTERS
REASONABLENESS STANDARD**

In consideration of the premium charged, it is hereby understood and agreed that Clause 9.D. *Allocation* is amended by deleting the second paragraph thereof in its entirety and replacing it with the following:

> In connection with any **Claim** either (i) made against both **Insureds** covered by this policy for such **Claim** and parties not covered by this policy for such **Claim**, or (ii) alleging matters that are both covered and uncovered under the terms and conditions of this policy, the **Insureds** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts to be covered as **Loss** by this policy, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insureds** and such uncovered parties.   In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** reasonably states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 042*

### ENDORSEMENT# 43

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number   *01-424-44-41*
issued to   *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## STATE AMENDATORY INCONSISTENT

In consideration of  the premium  charged, it is  hereby understood  and agreed that  in the
event that there  is an inconsistency  between a state  amendatory attached  to this policy
and any  term or  condition of  this  policy, then  it is  understood  and agreed  that, where
permitted  by law,  the  **Insurer**  shall apply   those terms  and conditions  of either   the
amendatory or the policy which are more favorable to the  **Insured.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED  REPRESENTATIVE

© Chartis Inc. All rights reserved.

MNSCPT                    *END 43*

**ENDORSEMENT#** *44*

This endorsement, effective *12.01am*      *November 29, 2012*      forms a part of
policy number    *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**RUN-OFF ENDORSEMENT**

In consideration of the additional premium of   (which shall be nonrefundable), it is hereby
understood and agreed that as of *November 29, 2012* (hereinafter the "**Effective Time**")
the policy is hereby amended as follows:

**I.**

Clause 8. DISCOVERY is deleted in its entirety and replaced with the following:

> *Run-Off Coverage*
> *Clause*
>
> The **Insured** shall have the right to a period of *Six* (   *6*) years
> following the **Effective Time** (herein referred to as the
> **Discovery Period**) in which to give written notice to the **Insurer**
> pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i)
> **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries**
> received by an **Insured Person**; and (iii) circumstances of which
> an **Organization** or an **Insured** shall become aware, in any such
> case, during said **Discovery Period** and solely with respect to a
> **Wrongful Act** that occurs on or prior to the **Effective Time.**

**II.**

Clause 12.B. CANCELLATION is deleted in its entirety and replaced with the following:

**B.     CANCELLATION**

This policy may not be canceled by or on the behalf of **Named Entity** or the **Insurer**
except as stated below. The **Insurer** may only cancel this policy in the event of
nonpayment of premium by the **Named Entity** (including the nonpayment of any
additional premium for this endorsement). The **Insurer** shall cancel this policy by
delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered,
certified, or other first class mail, at the **Named Entity's** address as shown in the
Declarations, written notice stating when, not less than 15 days thereafter, the
cancellation shall be effective. The mailing of such notice as aforesaid shall be
sufficient proof of notice.  **The Policy Period** (or **Discovery Period**, as the case may
be) terminates at the date and hour specified in such notice.

The premium for this policy shall be non-refundable.

⚙ Chartis Inc. All rights reserved.
*END 044*

**ENDORSEMENT#** *44*    (continued)

**III.**

Clause 10.A. TRANSACTIONS is deleted in its entirety.

**IV.**

Notwithstanding any other provision of this policy, this policy shall not provide coverage for any **Wrongful Act** occurring after the **Effective Time.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 044*

104142 (4/10)                                        2

**ENDORSEMENT#** *45*

This endorsement, effective *12.01am*     *November 29, 2012*     forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**TERRORISM EXCLUSION - CERTIFIED ACTS**

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") as follows:

(1)   ACT OF TERRORISM. -
    (A)   CERTIFICATION. - The term "act of terrorism" means any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States -
        (i)    to be an act of terrorism;
        (ii)   to be a violent act or an act that is dangerous to -
            (I)     human life;
            (II)    property; or
            (III)   infrastructure;
        (iii)  to have resulted in damage within the United States, or outside of the United States in the case of -
            (I)     an air carrier or vessel [described in TRIA]; or
            (II)    the premises of a United States mission; and
        (iv)   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B)   LIMITATION. -  No act shall be certified by the Secretary as an act of terrorism if -
        (i)    the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
        (ii)   property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
    (C)   DETERMINATIONS FINAL. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
    (D)   NONDELEGATION. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

The following applies solely to commercial property policies:

Where required by state law, if an act of terrorism results in fire, the Insurer will pay for the direct loss or damage to Covered Property, as this term is defined in the commercial property policy, caused by that fire.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

℗ All rights reserved.

*END 045*

## ENDORSEMENT# *46*

This endorsement, effective *12.01am*   *November 29, 2012*   forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 046*

89644 (7/05)                                    Page 1 of 1

ENDORSEMENT# *47*

This endorsement, effective *12.01am*     *November 29, 2012*          forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104122 | 04/10 | D&O ADMITTED DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 104123 | 04/10 | D&O ADMITTED GUTS |
| 104870 | 04/10 | CRISISFUND APPENDIX |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| 104141 | 04/10 | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (WITH SECURITIES CLAIM CARVE-OUT) |
| 104959 | 04/10 | RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN |
| 104962 | 04/10 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| 106819 | 09/10 | PRE-CLAIM INQUIRY AMENDED COST OF PRODUCING DOCUMENTS |
| 104948 | 04/10 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT WITH EXCEPTION FOR NON-INDEMNIFIABLE LOSS |
| 106013 | 07/10 | CLAIM DEFINITION AMENDED - REQUESTS TO TOLL STATUTE OF LIMITATIONS |
| 104940 | 04/10 | ERISA EXCLUSION AMENDED TO APPLY SOLELY TO COMPANY BENEFIT PLANS |
| 106823 | 09/10 | SEVERABILITY OF EXCLUSIONS AMENDED GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION |
| 105000 | 04/10 | SEVERABILITY OF THE APPLICATION AMENDED (ADVANCEMENT) |
| 105002 | 04/10 | SHADOW DIRECTORS COVERAGE |
| 106010 | 07/10 | TRANSACTION AMENDED DELETE SUBPARAGRAPH (3) |
| 107034 | 10/10 | CONDUCT EXCLUSIONS AMENDED FINAL NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING |
| 106824 | 09/10 | ENTITY V INSURED EXCLUSION AMENDED WHISTLEBLOWER CARVEBACK |
| 107317 | 11/10 | SPOUSAL DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE |
| 106006 | 07/10 | DISCOVERY CLAUSE AMENDED DELETE OR REPLACED |

*END 047*

ENDORSEMENT# *47*

This endorsement, effective *12.01am*      *November 29, 2012*            forms a part of
policy number  *01-424-44-41*
issued to *CERADYNE, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 107033 | 10/10 | APPLICATION AND UNDERWRITING AMENDED RELIANCE AND INCORPORATION |
| 106012 | 07/10 | BANKRUPTCY WAIVER ADDED |
| 106828 | 09/10 | UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW |
| 106005 | 07/10 | EXECUTIVE EDGE RENEWAL TRANSITION ENDORSEMENT |
| 106829 | 09/10 | EXTRADITION AMENDED SOUGHT TO BE SURRENDERED |
| 106818 | 09/10 | RECOVERY OF LIMITS AMENDED DELETE LAST SENTENCE |
| 106816 | 09/10 | LOSS AMENDED DELETE COURT ORDER WORDING |
| 106825 | 09/10 | CONDUCT EXCLUSIONS AMENDED PERSONAL PROFIT FINANCIAL ADVANTAGE |
| 106830 | 09/10 | GLOBAL LIBERALIZATION AMENDED DEFINE WORLWIDE EFFECT |
| 108595 | 04/11 | DODD-FRANK 954 COSTS |
| 106822 | 09/10 | SOX 304 COSTS AMENDATORY |
| 108598 | 04/11 | NOTICE AND REPORTING AMENDED 90-DAY POST POLICY REPORTING PERIOD |
| 108589 | 04/11 | ALTERNATIVE DISPUTE RESOLUTION AMENDED WAITING PERIOD REVISED FOR EXPIRATION OF STATUTE OF LIMITATIONS |
| 108600 | 04/11 | OTHER INSURANCE AND INDEMNIFICATION AMENDED DELETE ANTI STACKING |
| 104934 | 04/10 | CRISISPLUS ENDORSEMENT |
| 108592 | 04/11 | CONTROL PERSON CAPACITY |
| 108590 | 04/11 | APPLICATION AMENDED PUBLIC FILINGS |
| 108587 | 04/11 | ADVANCEMENT AMENDED NOT IN DEFAULT OF PAYMENT RETURN OF PAYMENTS |
| 106831 | 09/10 | LIBERTY PROTECTION COSTS AMENDED DELETE NO CLAIM MADE OR PRE CLAIM INQUIRY KNOWN REQUIREMENT |
| 106832 | 09/10 | LOSS AMENDED CLEANUP COSTS |
| 108604 | 04/11 | PRE-CLAIM INQUIRY AMENDED CHANGE AND TO OR |
| 108606 | 04/11 | SEVERABILITY OF EXCLUSIONS AMENDED TOP 3 OF NAMED ENTITY |

*END 047*

**ENDORSEMENT#** *47*

This endorsement, effective *12.01am*      *November 29, 2012*                forms a part of
policy number   *01-424-44-41*
issued to *CERADYNE, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 108593 | 04/11 | DEFENSE AND SETTLEMENT AMENDED 60 DAYS TO ADVANCE DEFENSE COSTS |
| 108602 | 04/11 | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED SUBSTANTIALLY |
| 108603 | 04/11 | PERSONAL INJURY EXCLUSION AMENDED UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK |
| 108588 | 04/11 | ALLOCATION CLAUSE AMENDED COVERED AND UNCOVERED PARTIES AND MATTERS REASONABLENESS STANDARD |
| MNSCPT | | STATE AMENDATORY INCONSISTENT |
| 104142 | 04/10 | RUN-OFF ENDORSEMENT |
| 96557 | 02/08 | TERRORISM EXCLUSION - CERTIFIED ACTS |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 047*



# CLAIM REPORTING FORM

**Issuing Company:** *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Reported under Policy/Bond Number:** _01-424-44-41_          Date: _____

**Type of Coverage:** D&O _____   E&O _____   Fidelity _____ (complete the Fidelity Supplemental on the next page)

**Insured's Name, as given on Policy Declarations (Face Page):**

*CERADYNE, INC.*

_____

_____

**Contact Person:** _____

**Title:** _____

**Phone:** _(_____)_____-_____Ext _____

**eMail:** _____ @ _____

—————————

**Case or Claimant Name:** _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

—————————

**Insurance Broker/Agent:** *WOODRUFF-SAWYER & CO* _____

**Address:** *2 PARK PLAZA, SUITE 500, IRVINE, CA 92614* _____

**Address:** _____

**Contact:** *CAMERON ESTEY* _____   Phone: _____

**eMail:** *carrierdocs@wsandco.com* _____

—————————

**Send Notice of Claims to:**   Chartis                     Phone:  (888) 602-5246
                               Financial Lines Claims    Fax:    (866) 227-1750
                               P.O. Box 25947            Email:  c-Claim@chartisinsurance.com
                               Shawnee Mission, KS 66225



**CLAIM REPORTING FORM**
**FIDELITY SUPPLEMENTAL**
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number:  *01-424-44-41*

---

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:    Employee Dishonesty    _____      Computer Fraud         _____

                  Funds Transfer            _____      Robbery/Burglary       _____

                  ID Theft                  _____      Forgery                _____

                  Client Property           _____      In Transit             _____

                  ERISA                     _____      Credit Card Forgery    _____

                  Other                     _____      if Other, describe: _____

---

Send Notice Of Claims To:    Chartis                      Phone:   (888) 602- 5246
                          Financial Lines Claims        Fax:     (866) 227- 1750
                          P.O. Box 25947                Email:   c- Claim@chartisinsurance.com
                          Shawnee Mission, KS 66225

*centralized Customer Link and Information Management*